ODETTE GONZÁLEZ SALAS, Plaintiff and Appellant, *v.* ROSA MARÍA CHARNECO WIDOW OF GONZÁLEZ RIVERA, Defendant and Appellee.

No. R-68-68. Decided January 29, 1971.

Aurelio Roque Delgado for appellant. Raúl Matos, Carlos N. Souffront, and Adelaida V. Souffront for appellee.

MR. JUSTICE MARTÍNEZ MUÑOZ delivered the opinion of the Court.

We must decide in this case, whether in the context of § 1020 of the Civil Code of Puerto Rico, which consecrates the redemption of coheirs, the widow is a *stranger* in the inheritance of her deceased husband.

José Manuel González Rivera died on April 17, 1954, having executed a will. He married twice. In his first marriage he begot two children, José Clemente and Odette González Salas, appellant herein.

In his second marriage to Rosa María Charneco, appellee herein, González Rivera begot three children named Ana María, José Manuel, and Sandra María González Charneco.

On January 23, 1967, the Superior Court, Ponce Part, rendered judgment in an action of filiation declaring Nilsa González Otero daughter of José Manuel González Rivera with all the rights to the inheritance state of the latter.

Three days before the judgment was rendered, Nilsa González Otero, plaintiff in the action of filiation, the widow Rosa María Charneco, and all the children begotten in marriage, with the exception of appellant Odette González Salas, agreed through public deed number one of that same date, before notary Nazario Lugo Silvagnoli, to a compromise of the economical aspect of the action of filiation, excluding its filial aspect, through which Nilsa González Otero conveyed any right, title, stock, interest or share corresponding to her in the inheritance of José Manuel González Rivera and Rosa

Ana Rivera widow of González,[1] in favor of Rosa María Charneco and the children of the first and second marriages of José Manuel González Rivera, with the exception of Odette González Salas, in a proportion of one-third (⅓) for defendant Rosa María Charneco and the remaining portion in equal parts for the others. The vendor was paid the amount of sixty thousand dollars ($60,000.00), of which Rosa María Charneco paid twenty thousand dollars ($20,000.00).

On February 15, 1967, Odette González Salas, the only daughter who did not appear in the deed, filed an action for legal redemption seeking to redeem the rights acquired from Nilsa González Otero by her father's widow, Rosa María Charneco widow of González Rivera appellee herein, in the aforesaid contract of compromise, seeking to subrogate herself in the place of the defendant and offering to reimburse the expenses which corresponded to the latter for the execution of the above-mentioned deed as well as any other useful and necessary expenses, in addition to the expenses of the deed to convey to her the hereditary rights involved. Together with the action for redemption she deposited with the clerk's office in the trial court, the amount of twenty thousand dollars ($20,000.00) at the disposal and for the benefit of the defendant to cover the sale price and thus redeem the third (1/3) part of the hereditary rights sold by Nilsa González Otero to defendant Rosa María Charneco.

Appellee is the widow of the predecessor, who was appellant's father. In the will executed by the latter, in the SEVENTH clause, he designated his wife, Rosa María

---

[1] Rosa Ana Rivera widow of González was the mother of José Manuel González Rivera and the grandmother, on the father's side, of appellant Odette González Salas. She died on August 18, 1957. The action of redemption filed by plaintiff in regard to the rights acquired by Rosa María Charneco in the inheritance of her mother-in-law Rosa Ana Rivera widow of González was sustained by the trial court because of the fact that defendant was a "stranger" in the inheritance of her mother-in-law. Said conclusion is final and is not considered in this appeal.

Charneco, as legatee in the usufruct of the third of the property which can be freely disposed of, bequeathing the naked property of that free third to his three children begotten in his second marriage, Ana María, Sandra María, and José Manuel. In the EIGHTH clause he designated his five children named Odette González Ortiz, José Clemente González Ortiz, Ana María González Charneco, Sandra María González Charneco, and José Manuel González Charneco as sole and universal heirs in the remaining of all his properties, rights and shares, that is, in the two thirds devoted for the legal portion, on equal parts and without prejudice to the usufructuary portion provided by law in favor of his wife Rosa María Charneco.[2]

The complaint object of the judgment appealed from relies on § 1020 of the Civil Code, 31 L.P.R.A. § 2886. Said section creates the action for legal redemption, also known as redemption of coheirs. Said section provides:

"If any of the heirs should sell his hereditary rights to a stranger before the division, all or any of the coheirs may subrogate himself in the place of the purchaser, reimbursing him

---

[2] "SEVENTH:—The appearing testator, José Manuel González Rivera, as proof of the love he professes for his wife, Rosa María Charneco González, hereby BEQUEATHS to her the usufruct of the third of all his actual and future property which can be freely disposed of, and he BEQUEATHS the naked property of said free third on equal parts to his three legitimate children named Ana María, José Manuel, and Sandra María, all surnamed González Charneco, begotten in his marriage with his present wife, Rosa María Charneco González.

"EIGHTH:—Likewise, the deponent testator José Manuel González Rivera, institutes, designates and selects his five legitimate children named Odette González Ortiz, José Clemente González Ortiz, Ana María González Charneco, José Manuel González Charneco, and Sandra María González Charneco, as his sole and universal heirs in the remaining portion of all his properties, rights, and actual and future shares, that is, in the two thirds devoted for the legal portion, on equal parts, without prejudice to the usufructuary portion provided by law in favor of his wife Rosa María Charneco González, the testator's will being that said legatees and heirs, inherit his property in the manner already set forth and that they hold and enjoy the same in his memory, without any limitation whatsoever, and with God's and the testator's blessing."

for the value of the purchase, provided they do so within the period of a month, to be counted from the time they were informed thereof."

For the solution of this case it is necessary to establish some basic premises concerning the nature of this action about which there is no disagreement.

■ First, its purpose. On previous occasions we have pointed out that the purpose of the action for redemption of heirs is to prevent the intervention of a stranger in the division operations. *Lugo* v. *Ferrer*, 85 P.R.R. 832, 836 (1962). Undoubtedly, it is inferred from the text itself of § 1020. In *Rivera* v. *Archevald*, 83 P.R.R. 582, 592 (1961), we stated the following:

"Colin and Capitant state the reasons more thoroughly, in our opinion, that justify the institution of the hereditary redemption, even conceding that it is contrary to the security of the transactions and to the underlying rule of the incorporality in matters of contracts in our law. They state thus:

" '1. The partition is a family operation, which, because it incorporates into the mass all the deceased's papers, may uncover family secrets, their situation, their business, which would be embarrasing to the ears of strangers.

" '2. In the partition among next of kin it is frequently difficult to procure the consent necessary to carry out successfully the partition, which is the form most convenient for all. Would this not be even more difficult if there should participate in that act strangers moved by a desire to speculate?

" '3. Lastly, the exclusion from the partition transactions of strangers assignees of hereditary rights affords to the coheirs a means of preserving the property in the family, particularly the hereditary real property. By this latter result the redemption of hereditary interests is linked with the oldest institution, but which is now obsolete, of family or patrimonial redemption.' "

Professor Guaroa Velázquez, deceased, states the same thing in his work entitled *Teoría del Derecho Sucesorio Puertorriqueño*[3] when he says:

---

[3] Equity Publishing Corporation, Second Revised Edition, at p. 102 (1968).

"As set forth by Planiol and Ripert the hereditary redemption is the means organized by law to circumscribe the state of indivision and the partition operations to the circle of the co-heirs, discarding the holders of the undivided rights when they are strangers in the hereditary transfer. According to this institution it is guaranteed, in the first place, that the property is kept in the family, and that the same is not split; in the second place, it prevents people from meddling in the family's private affairs; and finally, the difficulties in the partition caused by persons moved by profit is prevented."

Another authority, the Supreme Court of Spain, in its judgment of April 25, 1964,[4] considers that the purpose of the action for the redemption of coheirs provided by § 1067 of the Spanish Civil Code, equivalent to § 1020 of our Civil Code is to ". . . maintain the portion sold in the inheritance and to eliminate, through the subrogation therein, an ownership extraneous to the hereditary complex originally created by the testator or by the law."[5]

Second. The right of redemption is of a privileged nature, for it restricts the freedom of contracting. In *Vellón* v. *Central Pasto Viejo*, 34 P.R.R. 226, 232, 233 (1925), we decided that the co-owner's right of redemption authorized by § 1412 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3922, is in itself contrary to the principle of the freedom of contracting and that the conditions required for its exercise must be strictly complied with. In *Rivera* v. *Archevald, supra* at 589, we referred to the practically unanimous doctrine, to the effect that the hereditary subrogation consecrated in § 1020 of the Civil Code "is a species . . . of redemption of co-owners, for both involve a situation of indivision, except that the former presents a difference by reasons of the object for which the community was created." We consider then that the rule established in *Zalduondo* v. *Iturregui*, 83 P.R.R. 1, 19 (1961),

---

[4] Aranzadi, *Repertorio de Jurisprudencia*, No. 1982 (1964).

[5] 112 *Jurisprudencia Civil*, No. 59.

concerning the matter of redemption is, relevant to the solution of the instant case, to the effect that:

". . . the redemption, because of its privileged nature, limiting the power of the purchaser to dispose of the property and which sometimes is considered as an institution disturbing the right of contracting freely, is not an absolute right which can be separated from its exercise . . . ."

■■ The Supreme Court of Spain has stated that because of its nature, the action for hereditary redemption should be restricted more than broadened.[6] We hold that in its *substantive* aspect as well as in the *exercise* thereof, in order to enforce the same, we should strictly limit ourselves to the letter of the provision which creates this special action.

■ We have already seen that the evident purpose of the hereditary redemption is to circumscribe the state of indivision and the partition operations to the circle of the coheirs. That is not subject to discussion. Neither is the doctrine of the Supreme Court of Spain[7] which proclaims that the word *stranger* is used in the article of the Spanish Civil Code, equivalent to § 1020 of our Civil Code, in opposition to co-owner of the thing held in common and that any person who is not any heir is a stranger, in dispute among the Spanish commentators. Manresa points out some examples: a disinherited child, the deceased's father, when the inheritance corresponds to the children, an heiress' husband, the legatees, the creditors of the heirs, etc., all are strangers for the purpose of this article. Right after, the author asks himself:

"If the sale is made to the surviving spouse, can the coheirs seek the redemption? The surviving spouse is a forced heir; as long as he is he cannot be considered a stranger; which-

---

[6] Judgment of November 5, 1908. Manresa, without making reference to this judgment, treats, with all propriety in our opinion, the right of hereditary redemption as an "exceptional" right and, therefore, of "limited construction". VII *Comentarios al Código Civil Español* 809, Seventh Revised Edition (1955).

[7] Judgment of February 7, 1944, V *Jurisprudencia Civil*, No. 35.

ever the nature of the right granted to him might be, the letter of the law does not accept another interpretation."[8]

 The question is not new in this jurisdiction. Our case law has acknowledged the status of heir to the surviving spouse. Thus in *Luce & Co.* v. *Cianchini*, 76 P.R.R. 155, 162–163 (1954), followed in *Widow of Sambolín* v. *Registrar*, 94 P.R.R. 303, 306 (1967), we stated the following:

"We know that the widow's usufructuary quota is the legal portion, 14 Scaevola, *Código Civil*, 712, which the law reserves for the surviving spouse, who is a forced heir. Section 735 in connection with § 736, paragraph 3 of the Civil Code (1930 ed.). The testator cannot impose any burden or conditions of any kind whatsoever upon the legal portion. Section 741; 5 Valverde, *Tratado de Derecho Civil Español* 274; 6 Manresa, *op. cit.*, 418, 602. Therefore, a provision by the testator to the effect that the legal usufruct of his surviving spouse would be subject to a resolutory condition should she remarry, shall be considered as not imposed, because it is contrary to law as set forth in the afore-cited § 741. Section 721; 6 Manresa, *op. cit.*, 297; 14 Scaevola, *op. cit.*, 676, 808. A provision to that effect would mean that the legal usufruct would be extinguished if the resolutory condition were fulfilled. Section 441, paragraph 2. However, as Manresa says, *op. cit.*, Vol. 6, p. 609, that paragraph does not apply to the widow's usufructuary quota since 'the usufruct granted to the surviving spouse is for life, there is no other time or *condition* than the span of life of the usufructuary . . . .' (Italics ours.) 'The legal portion—Manresa continues, *op. cit.*, p. 292—proceeds from the patrimony of its owner, it ceases to belong to him: he may enjoy it but he may not dispose of it. The rights of the testator over it or over the right of which the legal portion consists, as regards the power to dispose of it, are equal to that of a stranger, he may not dispose of it, therefore, *he may in no way encumber, limit or modify that right . . . .*' (Italics ours.) To that effect Scaevola indicates, *op. cit.*, Vol. 14, p. 808, that the usufructuary quota 'is . . . exempted from any condition, because its nature makes it invulnerable to any encumbrance.' "

---

[8] 7 Manresa, *op. cit.*, p. 812.

■ In the *Cianchini* case (footnote 5, p. 162) we took notice of the fact that this point has been subject to disputes among the commentators, and this Court chose to favor the Spanish doctrine and case law which establish the status of forced heir of the surviving spouse.[9] We reaffirm this view again. Following the text of § 736 of the Civil Code, 1930 ed., 31 L.P.R.A. § 2362, the widow or widower must be considered an heir for it is thus included and named therein.[10] Considering the exceptional character of the hereditary redemption, we should not broaden the same to include the surviving spouse. The latter is not a stranger in the hereditary complex but an heir even if it is in the usufructuary character. Since the surviving spouse is not a stranger, the action filed against defendant-appellee directed to redeem the rights acquired by the latter in the inheritance of her deceased husband José Manuel González Rivera does not lie. As Bonet

---

[9] Such distinguished commentators as Manresa, Vol. 7 *op. cit.*, p. 812; J. Santamaría, I *Comentarios al Código Civil* 817–819; Bonet Ramón, V *Compendio de Derecho Civil* 617–620; Sánchez Román, VI *Derecho Civil* 2084; Valverde, V *Tratado de Derecho Civil Español* 246; Francisco Espinar Lafuente, *La Herencia Legal y el Testamento* 422, sustain the thesis to the effect that the surviving spouse is the heir in the succession of his deceased spouse. In opposition to these commentators there are others not less distinguished who maintain that the surviving spouse is not an heir; among them, Colin and Capitant, VIII *Curso Elemental de Derecho Civil* 493, Madrid 1928, Borell y Soler, V *Derecho Civil Español* 291; Roberto de Ruggiero, II-2 *Instituciones de Derecho Civil* 437–438; Guaroa Velázquez, *Derecho Sucesorio Puertorriqueño* 103, § 118.

For a complete analysis of this doctrinal controversy, see: V-II Puig Peña, *Derecho Civil Español* 355 *et seq.;* V Diego Espín, *Derecho Civil Español* 312 *et seq.*; V Bonet Ramón, *Compendio de Derecho Civil* 617 *et seq.*

[10] This section says "Forced heirs are:

"1. Legitimate children and descendants, with regard to their legitimate parents and ascendants, and legally recognized natural children, with regard to their natural or legitimate parents and ascendants.

"2. In the absence of the foregoing, the legitimate parents and ascendants, with regard to their legitimate children and descendants.

"3. The widower or widow, in the manner and extent established in sections 2411, 2412, 2413 and 2414 of this title."

Ramón reminds us, V *Compendio de Derecho Civil* 613 (1965):

"Marriage—as De Diego writes—is the origin of the family, the bud and foundation of the same; if it is said that the spouses are not relatives, it is because they constitute a superior unit, so great and intense is the community of their life and the identification of their affection: *'erunt duo in carne una'*. Therefore it is not possible to conceive that those who during their lifetime merged into one being to beget and institute a family, running the same risks and serving a common destiny, are estranged one from the other at the time of their death."

The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.